STATE OF IDAHO ex rel. Robert M. ROBSON, Attorney General, and John D. Silva, Commissioner of Finance, Plaintiff,

v.

FIRST SECURITY BANK OF IDAHO, National Association, and William B. Camp, Comptroller of the Currency of the United States, Defendants.

STATE OF IDAHO ex rel. Robert M. ROBSON, Attorney General, and John D. Silva, Commissioner of Finance, Plaintiff,

v.

The IDAHO FIRST NATIONAL BANK, and William B. Camp, Comptroller of the Currency of the United States, Defendants.

Civ. Nos. 1-69-83, 1-69-101.

United States District Court,
D. Idaho, S. D.
April 22, 1970.

Robert M. Robson, Atty. Gen. of Idaho, Richard Greener, and Stewart A. Morris, Asst. Attys. Gen., Boise, Idaho, for plaintiff.

Paul B. Ennis, of Hawley, Troxell, Ennis & Hawley, Boise, Idaho, C. Preston Allen, of Ray, Quinney & Nebeker, Salt Lake City, Utah, for defendant First Security Bank of Idaho, N.A.

Willis E. Sullivan, of Langroise, Clark, Sullivan & Smylie, Boise, Idaho, for defendant Idaho First National Bank.

C. Westbrook Murphy, Office of the Comptroller of the Currency, Washington, D. C., Sherman F. Furey, Jr., U. S. Atty., D. Idaho, William D. Ruckleshaus, Asst. Atty. Gen., Harland F. Leathers, and A. James Barnes, Attys., Dept. of Justice, Washington, D. C., for defendant William B. Camp, Comptroller of the Currency.

Calvin Davison, James F. Bell, Peter B. Work, of Reavis, Pogue, Neal & Rose, Washington, D. C., John L. Runft, of Eberle, Berlin, Morgan, Kading & Turnbow, Boise, Idaho, of counsel, for National Association of Supervisors of State Banks, amicus curiae.

## MEMORANDUM OF OPINION AND ORDER

FRED M. TAYLOR, Chief Judge.

The plaintiff State of Idaho brought these actions on the relation of its Attorney General and of its Commissioner of Finance, seeking a declaratory judgment of this court that an administrative ruling by the defendant Comptroller (Comptroller's Manual for National Banks, ¶ 7310) is contrary to federal and state law, and that activities undertaken by the defendant national banks under color of the authority provided by the Comptroller's ruling are similarly unlawful. The plaintiff also seeks an injunction prohibiting such authorization and enforcement thereof by the Comptroller, and further prohibiting the defendant banks from acting under the authority of that ruling.

The defendants in each action have moved to dismiss plaintiff's amended complaints on the grounds that the plaintiff lacks standing to maintain the suit; that the amended complaints present no justiciable case or controversy; and that this court lacks jurisdiction over the subject matter. In addition, the defendant Idaho First National Bank has moved to dismiss the com-

plaint on the ground that it fails to state a claim upon which relief can be granted.

The plaintiff alleges that Title 12. U. S.C. § 85 limits a national bank to that rate of interest allowed a state bank for a specific type of loan in the state in which the national bank is doing business. That section provides in part:

"Any association may take, receive, reserve and charge on any loan or discount made, * * * interest at the rate allowed by the laws of the state, * * * where the bank is located, * * * and no more, except that where by the laws of any state a different rate is limited for banks organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such state under this chapter."

The plaintiff also alleges, inter alia, that the maximum interest that may be charged on installment loans is six per cent (6%) discount per annum, which constitutes an annual effective rate of eleven and one-half per cent (11½%); that the defendant banks have initiated programs of financing consumer purchases through credit cards issued and sponsored by the banks; that the banks are presently contracting with citizens of the State of Idaho for the issuance and use of these credit cards; and that the defendant banks are presently exacting an interest rate of one and one-half per cent (½%) per month, or an effective annual rate of eighteen per cent (18%), from bank customers using these credit cards.

The plaintiff alleges that the defendant banks justify the charging of this higher interest rate on the authority of the Comptroller's ruling to the effect that a national bank may charge any rate of interest allowed to any lender under the laws of the state; that the Comptroller included in such ruling the statement that a national bank might lawfully charge that rate of interest allowed a small loan company. The plaintiff contends that the ruling of the Comptroller is contrary to state and federal law, and that the consequent unlawful exaction of interest by the defendant banks will cause great and irreparable damage to the state banking system, to the dual banking system within the state, and to the citizens of the State of Idaho. It is in this posture of the pleadings that the court must test the sufficiency of the complaints to establish the plaintiff's standing to maintain the suit, and to establish the existence of a justiciable controversy over which this court may exercise jurisdiction.

■ The question of standing to maintain the suit is controlled by the recent guidelines enunciated by the Supreme Court of the United States in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The Court there established, 397 U.S. 150, 90 S.Ct. at 829, 830, that in order to have standing to maintain a suit, the plaintiff must allege "that the challenged action has caused him injury in fact, economic or otherwise", and must further allege that the interest which he seeks to protect is "arguably within the zone of interests to be protected or regulated by the statute * * * in question". The statute in this case is 12 U. S.C. § 85.

It is the opinion of this court that the amended complaint in each case fails to meet the requirement of alleging an injury in fact. The complaints allege only a threatened injury to the citizens of the State of Idaho, to the dual banking system of state and national banks operating within the state, and to the state banking system generally. The complaints do not allege any injury, economic or otherwise, to the Commissioner or to the Attorney General in either their individual or official capacities. The plaintiff argues that the allegation of injury to the state banking system implies an injury to the Commissioner of Finance, who is charged by statute with the execution of the State's banking laws. To give effect to the plaintiff's contention would require this court to

infer facts not pleaded. The complaints not only fail to delineate the nature of the injuries which have been or will be suffered, but further fail to designate those elements of the "state banking system" adversely affected thereby. Certainly it is far too broad an inference for this court to determine that all the various entities which comprise the state banking system have parallel and equivalent interests which will suffer similar injury because of the acts complained of, and that therefore an allegation of injury to the state banking system generally imports a like allegation of injury to the Commissioner of Finance. The plaintiff suggests in his briefs and oral argument that the ruling of the Comptroller and the acts of the defendant banks contravene the small loan laws of the State of Idaho, and therefore infringe upon the right of the Commissioner of Finance to regulate that industry. This court cannot, however, transpose argument into pleadings as a method of sustaining the sufficiency of the complaints.

Similarly, the complaints fail to allege any injury to the Attorney General of the State of Idaho. The plaintiff alleges that the Attorney General is empowered to institute actions on behalf of the State and the people of the State, pursuant to the Idaho Code, § 67–1401(1). That section in pertinent part describes the duty of the Attorney General to:

"* * * prosecute or defend all causes to which the state or any officer thereof, in his official capacity, is a party; * * * ."

That section, however, does not purport to authorize the Attorney General to serve in the capacity of a litigant unless he is a "party" in his official capacity. It authorizes only his representation as legal counsel of any state official, including himself, if that state official is a party to the action. Here, no injury is alleged to the Attorney General either individually or in his official capacity which is sufficient to create the requisite adverseness between himself and the defendants which would constitute a judicially cognizable controversy.

The second question set forth as a test for standing to sue, as enunciated in the *Data Processing* case, supra, is whether the allegations of the complaints are sufficient to show that the interests which the plaintiff here seeks to protect are "arguably within the zone of interests" which the relevant statute, 12 U.S.C. § 85, seeks to protect or regulate. This court considers that in those situations wherein the national banking laws incorporate state laws as standards to which the national banks may be held, the supervisor of state banks may well have an interest which the federal statute at least "arguably" seeks to protect or regulate. To the extent that federal law defers to state law, it would similarly appear to defer to those powers which the local supervisors of state banks may have in establishing or enforcing state standards. Had Congress not so intended to recognize the interest of the states in regulating interest rates within their respective borders, it would more logically have established uniform federal standards for national banks. By deferring to state law for the establishment of interest rates, it is at least arguable that Congress intended to protect the interest of the states and of state officials in administering laws relating to interest rates.

The proposition that Congress intended, by incorporating state law into a federal statute, to recognize and protect valid state interests, has recently found expression in cases involving the right of states and state officials to regulate branch banking within a state. Cf. First National Bank in Plant City, Florida v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969); Leuthold v. Camp, 405 F.2d 499 (9th Cir. 1969); Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694 (1967); Jackson v. First National Bank of Valdosta, 349 F.2d 71 (5th Cir. 1965). While these cases involve the construction of a statute other than the one presently before the court, and would therefore not necessarily be

determinative of the merits of this case, they are nevertheless persuasive of the proposition that, for purposes of determining standing, a federal law which incorporates state law arguably recognizes state interest in the subject matter. However, because the complaint fails to allege an injury to the Commissioner of Finance, the court cannot determine on these pleadings the interest of the Commissioner which is sought to be protected, and therefore may not determine whether that interest falls within the zone of interests protected by 12 U.S.C. § 85. While the Commissioner may well have an interest which the statute protects, that interest, if any, has not been adequately pleaded.

■ It does not appear, however, that Congress may arguably have intended to protect an interest of the Attorney General, nor does the complaint, failing as it does to allege any injury to the Attorney General, give any indication of that interest which he seeks to protect by these actions. It appears that the interests of the State of Idaho in this litigation, if any, are adequately represented by its Commissioner of Finance. It does not appear that a State may institute an action as *parens patriae* to protect the citizens of the State from the operation of a federal statute, since the position of *parens patriae* with respect to federal legislation is occupied by the federal rather than the state government. Public Utilities Commission of California v. United States, 356 F.2d 236 (9th Cir. 1966).

■ The remaining question to be determined is whether the Comptroller's ruling is reviewable by this court. Although these actions are brought for declaratory judgment and injunction, the real issue in both is the validity in law of the Comptroller's Ruling No. 7310, and the cases are more accurately cast in the posture of actions for review of that ruling. It is now clear that a party

aggrieved by a ruling of the Comptroller relating to the legitimate scope of activities of national banks is entitled to a judicial review of that ruling. Association of Data Processing Service Organizations, Inc. v. Camp, supra, 397 U.S. 150, 90 S.Ct. at 831, 832.

The court concludes that the plaintiff has failed to allege an injury in fact to any named plaintiff herein, and that the complaint is accordingly defective for failure to allege the standing of plaintiff to maintain this suit. The general allegations of the complaint are not sufficient to show an injury to the named state officials, or any of them, even though an "arguably protected interest" may exist under 12 U.S.C. § 85.

The foregoing conclusions are dispositive of the remaining motions now before the court. In the absence of proper allegations of injury, there can exist no judicially cognizable case or controversy, nor is a claim stated upon which relief can be granted. It is not necessary here to reach the question of jurisdiction, since this court has no jurisdiction in the absence of standing of the plaintiffs to bring these suits. However, if standing were properly alleged this court would indisputably have jurisdiction to review the ruling of the Comptroller under the Administrative Procedure Act, 5 U.S.C. § 702.

Although the defendants have in their oral arguments and briefs approached a discussion of the merits of these actions, the court does not, by this opinion, purport to express or otherwise intimate any views on any issue beyond the determination of the motions now before it.

Accordingly, it is ordered that the respective motions of the defendants be, and each of them hereby is, granted on the grounds and for the reasons hereinabove stated. It is further ordered that the plaintiffs may have twenty days within which to serve and file amended complaints.