NATURAL RESOURCES DEFENSE COUNCIL, Trout Unlimited of California, Bay Institute of San Francisco, California Natural Resources Federation, California Sportfishing Protection Alliance, California Trout, Friends of the River, Northern California Guides Association, Pacific Coast Federation of Fishermen's Associations, San Joaquin Raptor Rescue Center, Sierra Club, Stanislaus Audubon Society, Inc., United Anglers of California, California Striped Bass Association, and National Audubon Society, Plaintiffs,

v.

Roger PATTERSON, as Regional Director of the United States Bureau of Reclamation, Manual LUJAN, Jr., as Secretary of the United States Department of the Interior, and Friant Water Users Authority, Defendants,

Orange Cove Irrigation District, Lindmore Irrigation District, Lindsay–Strathmore Irrigation District, Terra Bella Irrigation District, Exeter Irrigation District, Ivanhoe Irrigation District, Tulare Irrigation District, Lower Tule River Irrigation District, Saucelito Irrigation District, Delano–Earlimont Irrigation District, Teapot Dome Water District, Arvin–Edison Water Storage District, Southern San Joaquin Municipal Utility District, Shafter–Wasco Irrigation District, Porterville Irrigation District, Stone Corral Irrigation District, Chowchilla Water District, Madera Irrigation District, Defendants/Intervenors.

Civ. No. S–88–1658 LKK.

United States District Court,
E.D. California.

April 30, 1992.

John B. Clark, Philip F. Atkins–Patten-son, Cinthia R. Fischer, Janet M. Alexan-der, Pettit & Martin, Hamilton Candee, Natural Resources Defense Council, Lau-rens H. Silver, Sierra Club Legal Defense Fund, Inc., and Patrick O'Donnell, Levy, Samrick & Bernard, San Francisco, Cal., for plaintiffs.

Kenneth A. Kuney, Berryhill & Kuney, Tulare, Cal., Ernest A. Conant, Scott K. Kuney, Young, Wooldridge, Paulden, Self & Farr, Bakersfield, Cal., Jan L. Kahn, Daniel M. Dooley, Kahn, Soares & Conway, Visalia, Cal., Jeffrey A. Meith, Michael V. Sexton, Minasian, Minasian, Minasian, Spruance, Baber, Meith & Soares, Oroville, Cal., Denslow Green, Green, Green & Rig-by, Madera, Cal., and Gary W. Sawyers, Bolen, Fransen & Boostrom, Fresno, Cal., for nonfederal defendants.

George L. O'Connell, U.S. Atty., Maria A. Iizuka, U.S. Dept. of Justice, Environ-ment & Natural Resources Div., Sacramen-to, Cal., K. Jack Haugrud and Eileen So-beck, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., for defendant U.S. (federal defendants).

## ORDER

KARLTON, Chief Judge Emeritus.

Plaintiffs, various environmental groups, seek to enjoin the Bureau of Reclamation ("Bureau") from entering into renewal con-tracts to supply water from the Friant Dam unit of the Central Valley Project.[1] They allege violation of the National Envi-ronmental Policy Act, 42 U.S.C. § 4332, the Endangered Species Act, 16 U.S.C. § 1536, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and various federal regulations and guidelines promulgated un-der those statutes.

---

**1.** For an historical overview of the Central Val-ley Project and the Friant Dam unit in particu-lar, *see United States v. Gerlach Live Stock Co.,* 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950); *Ivanhoe Irrig. Dist. v. McCracken,* 357 U.S. 275, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958); and *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

On January 7, 1992, plaintiffs were granted leave to amend to assert an APA claim premised on the Bureau's alleged violation of Section 8 of the Reclamation Act of 1902 ("Section 8").[2] Plaintiffs maintain that Section 8 mandates compliance by the Bureau, as owner of Friant Dam, with California Fish & Game Code § 5937 [3] and that the Bureau has failed to comply with this state law.[4]

Both the federal and non-federal defendants, the irrigation and water districts supplied by the dam, now move to dismiss this cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue that plaintiffs lack standing to assert this claim and that in any event Section 8 does not mandate the federal government's compliance with § 5937. For the reasons expressed below, defendants' motion is denied.[5]

## I

## DISMISSAL STANDARDS UNDER FED.R.CIV.P. 12(b)(6)

■ On a motion to dismiss, the allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks International Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *Id. See also Wheeldin v. Wheeler*, 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

■ In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing

2. Section 8 provides: "Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof: Provided, That the right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated and beneficial use shall be the basis, the measure and limit of the right." 43 U.S.C. § 383 (up until "Provided"), § 372 (following "Provided").

3. Cal. Fish & Game Code § 5937 provides: "The owner of any dam shall allow sufficient water at all times to pass through a fishway, or in the absence of a fishway, allow sufficient water to pass over, around or through the dam, to keep in good condition any fish that may be planted or exist below the dam. During the minimum flow of water in any river or stream, permission may be granted by the department to the owner of any dam to allow sufficient water to pass through a culvert, waste gate, or over or around the dam, to keep in good condition any fish that

may be planted or exist below the dam, when, in the judgment of the department, it is impracticable or detrimental to the owner to pass the water through the fishway."

4. Plaintiffs originally characterized the claim alleging violation of § 5937 as a supplemental state claim, with this court exercising jurisdiction pursuant to 28 U.S.C. § 1367. At the hearing on the motion to amend, I suggested and plaintiffs concurred, perhaps too quickly given the complexity of the motion now before the court, that the claim was appropriately brought as an APA claim for violation of Section 8.

5. At the court's request, the parties addressed whether abstention is appropriate. At oral argument, defendants requested that the court not construe their arguments as a formal motion to abstain. Accordingly, that issue is not currently before the court. The court notes, however, that a motion to abstain under either *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), would not appear welltaken. *See Knudsen Corp. v. Nevada State Dairy Commission*, 676 F.2d 374, 377 (9th Cir.1982) (*Pullman*); *Tucker v. First Maryland Sav. & Loan, Inc.*, 942 F.2d 1401, 1405 (9th Cir.1991) (*Burford*).

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

## II

## STANDING

■ A motion addressed to standing questions "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). It raises a legal question addressed to the allegations of the complaint, *see Public Agencies Opposed to Social Security Entrapment v. Heckler ("POSSE"),* 613 F.Supp. 558, 566 (E.D.Cal.1985), *rev'd on other grounds,* 477 U.S. 41, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986), and not the merits of the case. *POSSE,* 613 F.Supp. at 566. For this reason, in ruling on a motion to dismiss for want of standing the court accepts the allegations of the complaint as true and draws all inferences in favor of the plaintiff. *MWAA v. CAAN,* 501 U.S. ——, ——, 111 S.Ct. 2298, 2305–06, 115 L.Ed.2d 236, 251 (1991) (quoting *Warth v. Seldin,* 422 U.S. at 501, 95 S.Ct. at 2206).

■ To establish standing to sue under the APA, 5 U.S.C. § 702, plaintiffs must allege that they have suffered an injury in fact and must demonstrate that this injury falls within the "zone of interests" sought to be protected by the statutory provision which provides the legal basis for their complaint. *Air Courier Conference v. American Postal Workers Union,* 498 U.S. ——, ——, 111 S.Ct. 913, 917–18, 112 L.Ed.2d 1125, 1134 (1991). The injury-in-fact requirement is an Article III mandate,

while the "zone of interests" requirement is a nonconstitutional, prudential limitation on the exercise of jurisdiction. *Port of Astoria, Oregon v. Hodel,* 595 F.2d 467, 474 (9th Cir.1979). *See also Fair v. United States EPA,* 795 F.2d 851 (9th Cir.1986).

### A. *Injury in Fact*

■ Defendants do not argue that plaintiffs have failed to allege sufficient actual injury, nor could they. The complaint alleges that many of plaintiffs' members earn their living from the San Joaquin River and its environs and engage in recreational activities on the river. They allege economic and recreational damage suffered by members occasioned by the drying up of the San Joaquin River below the Friant Dam resulting from the Bureau's delivery of water pursuant to the original contracts and that they will continue to suffer those losses should the contracts be renewed. These allegations are sufficient to satisfy the injury-in-fact requirement for standing purposes. *State of Cal. etc. v. Watt,* 683 F.2d 1253, 1270 (9th Cir.1982), *rev'd on other grounds,* 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984). *See also Sierra Club v. Watt,* 608 F.Supp. 305, 314–15 (E.D.Cal.1985).

### B. *Zone of Interests*

The APA standing section, 5 U.S.C. § 702, does not contain a "zone of interests" test. The Supreme Court supplied this gloss as a means of implementing what it described as Congress' intent to broaden remedies, but not to allow suit by every person suffering injury in fact. *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 395, 107 S.Ct. 750, 754, 93 L.Ed.2d 757 (1987).[6]

■ The first step in "zone of interests" analysis is identification of the statute by which the zone of interest is measured. "[T]he relevant statute [under the APA], of course, is the statute whose violation is the gravamen of the complaint." *Air Courier,* 498 U.S. at ——, 111 S.Ct. at 921, 112 L.Ed.2d at 1138 (quoting *Lujan v. Nation-*

6. How Congress indicated this intention, not found in the language of the statute, has not been disclosed. So much for plain meaning when the shoe is on the other foot.

al *Wildlife Federation,* 497 U.S. 871, ——, 110 S.Ct. 3177, 3186–87, 111 L.Ed.2d 695, 714 (1990)). The court is to look only to the relevant statute unless another statute is found to bear an "integral relationship" to the underlying statute. *Air Courier,* 498 U.S. at ——, 111 S.Ct. at 920–21, 112 L.Ed.2d at 1137–38. Where this relationship exists, a court may look to both statutes. *Id.*

■ At oral argument, all parties agreed that to determine the "zone of interest" in the matter at bar the court is to look to both Section 8 and to § 5937. The court agrees. Under the pleadings, Section 8 and § 5937 bear an integral relationship with each other, since plaintiffs allege that Section 8's incorporation of state law "relating to the control, appropriation, use or distribution of water used in irrigation" incorporates § 5937.[7] *See Marshall & Ilsley Corp. v. Heimann,* 652 F.2d 685, 695–98 (7th Cir.1981), *cert. denied,* 455 U.S. 981, 102 S.Ct. 1489, 71 L.Ed.2d 691 (1982), and *State of Idaho ex rel. Robson v. First Security Bank,* 315 F.Supp. 274 (S.D. Idaho 1970).

■ Once the court has determined the relevant statute, it must examine whether the interest asserted by a plaintiff bears a "plausible relationship to the policies underlying" the statute. *Clarke,* 479 U.S. at 403, 107 S.Ct. at 759.

> In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no

indication of congressional purpose to benefit the would-be plaintiff.

*Id.* at 399–400, 107 S.Ct. at 757 (footnote omitted).

I now turn to the policies meant to be furthered by the enactment of Section 8 and § 5937.

■ The Supreme Court has characterized Section 8 as a statute exemplifying "cooperative federalism," *California v. United States,* 438 U.S. 645, 650, 98 S.Ct. 2985, 2988, 57 L.Ed.2d 1018 (1978). Notions of federalism usually refer to the requisite federal respect of state sovereignty. *See, e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Relative to Section 8, however, the Supreme Court has explained that Congress was motivated not only by respect for state sovereignty, but also sought to protect water users from being subjected to different and possibly conflicting state and federal water use statutes. The Court explained that a "primary motivating factor" for enacting Section 8 was Congress' intent to insure that state laws pertaining to the appropriation, distribution or use of water were preserved so as to avoid the confusion which would be occasioned by the same water rights being governed by both state and federal law. *California v. United States,* 438 U.S. at 668–69, 98 S.Ct. at 2997–98.[8] Put another way, a primary congressional concern in adopting Section 8 was protection of water users by ensuring that all in-state water use would be subject to the same restrictions.

Plaintiffs allege that § 5937 restricts for certain instream uses the Bureau's ability to divert all water from the area below the Friant Dam, an area which once made up a portion of the San Joaquin River. Plaintiffs' groups are composed of would-be users of the water and water-generated

---

7. The court's acceptance of plaintiffs' allegation for the purpose of testing standing goes only to the sufficiency of the pleading. Whether § 5937 is one of the state laws Congress intended to be applied to the Bureau through Section 8 is a merits determination discussed *ante.*

8. Indeed, in the same case, the Court explained that insuring application of state law to water

users has been a consistent aim on the part of Congress, even prior to passage of the Reclamation Act. *California v. United States,* 438 U.S. at 656, 98 S.Ct. at 2991 (Mining Act of 1866), 657 (Desert Land Act of 1877), and 659–660 (Act of March 3, 1891, 26 Stat. 1101, as amended, 43 U.S.C. § 946).

resources that would result if the Bureau were required to allow water to flow over or around the dam consistent with the provisions of § 5937. As potential benefactors of the instream uses of this water, it is plain plaintiffs' interests are not "marginally related to or inconsistent with the purposes implicit" in Section 8 and § 5937. Accordingly, plaintiffs have satisfied the zone-of-interests test.

Since plaintiffs' pleadings demonstrate injury in fact and satisfaction of the zone-of-interests test, defendants' motion to dismiss for want of standing is DENIED.[9]

### III

### MERITS [10]

Defendants contend that plaintiffs may not maintain this cause of action because Cal. Fish & Game Code § 5937, upon which plaintiffs' claim rests, is not one of the state laws incorporated by Section 8 and thus the Bureau is not obliged to comply with its provisions. Section 8 restricts federal interference only with state laws "relating to the control, appropriation, use or distribution of water used in irrigation". Defendants contend that § 5937 is a state statute which relates to the use of water for the maintenance of fish life rather than irrigation and is thus not incorporated by Section 8. I cannot agree.

Resolution of this aspect of defendants' motion is a matter of statutory construction. As I explain below, the plain meaning of Section 8, binding authority interpreting the statutory language employed therein, application of a relevant canon of statutory construction and the statute's legislative history all demonstrate that defendants' contention is without merit.

■■■■ I begin by noting that defendants' argument fails to take into account the tenet of statutory construction requiring a court to construe a statute so that every word has some operative effect. *United States v. Nordic Village*, 503 U.S. ——, ——, 112 S.Ct. 1011, ——, 117 L.Ed.2d 181, 189 (1992). By its terms, Section 8 does not apply solely to state water laws that determine the control, appropriation, use or distribution of water used in irrigation. Rather, the statute provides that nothing in the Reclamation Act is meant to interfere with the state laws "*relating to* the control, appropriation, use or distribution of water used in irrigation." Thus, plaintiffs may properly state a claim under Section 8 for a violation of a state statute not only where that statute directly regulates water used in irrigation, but also where the statute relates to the control, appropriation, use or distribution of water used in irrigation.[11] Thus, to determine whether § 5937 is incorporated into Section 8's saving clause, I must examine whether § 5937 relates to those state laws specified in Section 8.

This is not the first case where a court has been required to apply the phrase "relating to" used in a federal statute for the

---

**9.** Given this disposition, I need not reach the issue of plaintiffs' standing if Section 8 is construed to merely protect the state's sovereignty. Resolution of that issue is far from certain.

**10.** During oral argument, the court raised the question of whether § 5937 is a state law "relating to the control, appropriation, use or distribution of water used in irrigation" or whether it is more properly characterized as relating to the Bureau's "operation" of the dam. Subsequently, by letter plaintiffs informed the court of their willingness to provide further briefing on this question. Federal defendants responded opposing further briefing, arguing that they raised the issue of dam operation in a footnote in their moving brief and that plaintiffs therefore had an opportunity to discuss this issue. By letter, non-federal defendants joined in opposition to plaintiffs' suggestion.

Although the briefs lacked substantial discussion of what appears to be an issue central to this case, based on the thoughtful discussion by all parties at the hearing and the defendants' opposition to this suggestion, I conclude that further briefing is not appropriate.

**11.** The court here assumes that the phrase "water used in irrigation" modifies the words "control, appropriation, use or distribution" and not merely "distribution." Because I conclude that § 5937 relates to water used in irrigation regardless of the specific nature of the law, i.e., whether it concerns the control, appropriation use or distribution of this water, the court need not decide whether the term modifies each of the terms in the series.

purpose of referring to state statutes. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983) (interpreting the provision of Employee Retirement Income Security Act of 1974 ("ERISA") which preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a)). As the Supreme Court explained there, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2900. The Court concluded that it must give effect to this plain language unless there was good reason to believe Congress intended the language to have a more restrictive meaning. *Id.* at 97, 103 S.Ct. at 2900.

Obviously, the phrase thus construed has an extraordinary breadth. Indeed so construed, the Court explained, the phrase encompasses every state statute having any connection with the subject of the federal law unless the state statute's relationship to the federal statute is "tenuous, remote or peripheral." *Id.* at 100 n. 21, 103 S.Ct. at 2901. While recognizing the statute's expansive preemptive effect on state law when so construed, the Court felt compelled to give the phrase the full effect because there was no indication that Congress did not intend to give words in the phrase their ordinary meaning. Accordingly, unless there is reason to believe Congress intended the language to have a more restrictive meaning, I too must accord the phrase its full effect.

Neither the terms of Section 8 nor its history indicates that Congress intended the words "relating to" to be narrowly construed. Indeed, in *California v. United States*, 438 U.S. 645, 98 S.Ct. 2985, the Court explicitly rejected what it characterized as dictum from prior cases which narrowly interpreted Section 8. *Id.* at 674, 98 S.Ct. at 3000 (rejecting language from *Ivanhoe Irrigation District v. McCracken*, 357 U.S. 275, 291–92, 78 S.Ct. 1174, 1183–84, 2 L.Ed.2d 1313 (1958), and *Arizona v. California*, 373 U.S. 546, 586–87, 83 S.Ct. 1468, 1490–91, 10 L.Ed.2d 542 (1963)). The Court held that Section 8 subjected the distribution of water to state law unless that state law is inconsistent with congressional directives. *California v. United States*, 438 U.S. at 674–75, 98 S.Ct. at 3000–01; *see also California v. FERC*, 495 U.S. 490, 502–04, 110 S.Ct. 2024, 2031–32, 109 L.Ed.2d 474, 489 (1990), where Court noted the "broad terms" of Section 8's interpretation in *California v. United States*.[12] Thus, so long as § 5937 has a connection with or reference to the control, appropriation, use or distribution of water used in irrigation, it is incorporated by Section 8 unless it is found to be remote from Section 8's purposes.

■ Contrary to federal defendants' argument, such an interpretation does not eliminate the need for the subsequent statutory phrase "or any vested rights acquired thereunder." This argument assumes that to give these words effect, incorporation must be limited to state laws that vest rights. Although it is unclear whether § 5937 vests any water rights,[13] a

---

**12.** Defendants' argument that *FERC* substantially narrowed the holding in *California v. United States* must be rejected. Relying on the *FERC* Court's observation that "Section 8 does not indicate the appropriate treatment of laws relating to other water uses that do not implicate proprietary rights," 495 U.S. at 505, 110 S.Ct. at 2033, 109 L.Ed.2d at 490, defendants argue that if a state law does not implicate proprietary rights, it is not included within the purview of Section 8. *FERC* addressed application of Section 27 of the Federal Power Act of 1935, 16 U.S.C. § 821, not Section 8 of the Reclamation Act of 1902. Moreover, the Court in *FERC* went to great lengths to distinguish the two acts and

the opinion in *California v. United States*, 438 U.S. 645, 98 S.Ct. 2985 (noting the differences in the sections' language, legislative history and intent, and each section's relationship to the entire act within which it is contained). This effort strongly suggests that the decision in *FERC* was not intended to affect *California v. United States*.

**13.** Although the court need not and does not reach this issue, it is not clear that § 5937 does not implicate vested proprietary water rights since its application to Friant Dam would necessarily reduce the amount of water otherwise available for those with appropriative rights. *See California Trout Inc. v. State Water Re-*

natural reading of the statute does not suggest that only laws vesting water rights are incorporated. The natural reading is that Section 8 protects from federal interference both those state laws which have a connection with the control, appropriation, use or distribution of water used in irrigation, and individual rights which have vested under those, or any other, laws.

Having concluded that defendants' limited reading of the statute is inappropriate, I must determine whether § 5937 is a state statute that relates to the control, appropriation, use or distribution of water used in irrigation. Although the matter at bar is a question of first impression, both the Supreme Court and Ninth Circuit have provided guidance on this issue.

In *California v. United States*, 438 U.S. 645, 98 S.Ct. 2985, the Supreme Court carefully analyzed the legislative history of the 1902 Reclamation Act. It concluded that state law was to control the Secretary's appropriation, purchase or condemnation of necessary water rights, *id.* at 665, 98 S.Ct. at 2996, and the distribution of waters released from the dam, *id.* at 667, 98 S.Ct. at 2996, unless that state law is inconsistent with congressional directives. *Id.* at 674–75, 98 S.Ct. at 3000–01. But for certain subsequent developments in the Ninth Circuit, *California v. United States* would clearly be dispositive of the defendants' argument. I now examine the Circuit's treatment of the scope of Section 8.

On remand, the Ninth Circuit, in dicta, distinguished between laws relating to the impoundment and distribution of water on the one hand, and the operation of the dam on the other. *United States v. State of Cal., State Water Resources Control Bd.*, 694 F.2d 1171 (9th Cir.1982) (hereinafter *"U.S. v. Water Resources"*).[14] The court suggested that laws concerning operation of a dam were not covered under Section 8, and thus the Bureau would not have to comply with state law regarding dam operation. *Id.* at 1182.[15] Under this analysis, the determination of whether Section 8's savings clause incorporates § 5937 would turn on whether it was a law relating to the control, appropriation, use, or distribution of water used in irrigation or whether it is a statute controlling the actual operation of the dam. The either/or formulation of this question is hardly inevitable, and *U.S. v. Water Resources* does not suggest what resolution is appropriate if a statute both addresses operation of a dam and relates to distribution of water.

Defendants, indulging in the same assumption made in *U.S. v. Water Resources*, argue that because the implementation of § 5937 would require the release of water from the dam, it relates to dam operation and does not relate to the impoundment or distribution of water. Plaintiffs reply by arguing that while it is not clear what "actual operation of the dam" covers, the Ninth Circuit, by approving various conditions regulating the release of water in *U.S. v. Water Resources*, indicated that such conditions do not constitute control of the operation of the dam. At oral argument, plaintiffs also argued that if the application of any law that requires the opening of dam gates is considered a law controlling the operation of a dam, Section 8's savings clause would be eviscerated since

---

*sources Control Bd.*, 207 Cal.App.3d 585, 601, 255 Cal.Rptr. 184 (1989).

**14.** This court has been unable to find any case which defines "operation of a dam" in connection with Section 8. This is hardly surprising since the term "operation" appears nowhere in Section 8, but rather appears as a Ninth Circuit gloss in *U.S. v. Water Resources*, on the Supreme Court's decision of *California v. United States*. In general, the term "dam operation" has been used to refer to the opening of dam gates for the release of water. *See, e.g., Dugan v. Rank*, 372 U.S. 609, 623–24, 83 S.Ct. 999, 1008, 10 L.Ed.2d 15 (1963) (citing *State v. Rank*, 293

F.2d 340, 356 n. 8 (9th Cir.1961)), and *Narramore v. United States*, 852 F.2d 485 (9th Cir. 1988).

**15.** Because the issue was not directly before the court, the Ninth Circuit did not definitively determine whether Section 8, as explicated in the Supreme Court's opinion in *California v. United States*, warrants drawing this distinction. Rather than holding that the distinction applied, the Court only said that "[w]e doubt that California was intended to play a significant role in influencing the later operation of the dam." *United States v. Water Resources* at 1182.

compliance with many state water laws may require opening the dam gates.

I cannot agree with plaintiffs that the Ninth Circuit's decision in *U.S. v. Water Resources* approving the conditions imposed on the Bureau in the course of the permit process is dispositive of the issue now facing this court. There the court dealt with the Water Resources Control Board's conditioning of the appropriation permit on compliance with various provisions limiting the federal project's water impoundment and distribution for the preservation and enhancement of fish and wildlife. *See* 694 F.2d at 1173 ("the validity of these specific conditions is at the heart of this case"). It is, of course, true that some of these conditions would require the opening of the dam gates to allow water to pass through the dam. *See, e.g.,* Conditions 2, 5, 6, and 17 at 694 F.2d at 1183–84.[16] These conditions, however, were imposed as part of the permit process; thus they related to the appropriation and initial impoundment of the water, a situation the Supreme Court determined to be covered by Section 8. Here an entirely different issue is tendered, one related to the application of § 5937 to compel Bureau conduct independent of the permit process.

In a case decided subsequent to *U.S. v. Water Resources,* the Ninth Circuit ignored the distinction posited therein between laws relating to water usage and laws relating to dam operation. In *South Delta Water Agency v. U.S. Dept. of Int.,* 767 F.2d 531 (9th Cir.1985), the court observed, also in dicta, that as owners of the Friant Dam, the Bureau must "comply with state law both in their operation of the CVP and in their acquisition of water rights for the project." *Id.* at 537–38. *See also United States v. State Water Resources Control Bd.,* 182 Cal.App.3d 82, 134, 227 Cal.Rptr. 161 (1986). *South Delta Water Agency* tendered the question of whether Cal. Water Code § 11460 was incorporated by Section 8, thus providing plaintiffs with a cause of action under the APA. By its terms, § 11460 applies to dam operation.[17] The court held that the statute restrained the Bureau's operation of Friant Dam and that this restraint was not inconsistent with congressional intent as expressed in the Reclamation Act.

The apparent conflict between *U.S. v. Water Resources* and *South Delta Water Agency* concerning the Bureau's obligations relative to state laws affecting dam operation may be resolved by reading the dicta in the former case narrowly to reach only those state statutes which have as their exclusive result the regulation of dams, but not to encompass those statutes

**16.** Condition 2 provides in part: "Further order of the Board shall be preceded by a showing that the benefits that will accrue from a specific proposed use will outweigh any damage that would result to fish, wildlife and recreation in the watershed above New Melones Dam and that the permittee has firm commitments to deliver water for such other purposes."

Condition 5 provides in part: "Releases of conserved water from New Melones Reservoir for water quality control purposes shall be scheduled so as to maintain a mean monthly total dissolved solids concentration in the San Joaquin River at Vernalis of 500 parts per million or less and a dissolved oxygen concentration in the Stanislaus River as specified in the Water Quality Control Plan (Interim), San Joaquin River Basin 5C, State Water Resources Control Board, June 1971."

Condition 6 provides: "The State Water Resources Control Board reserves jurisdiction over these permits for the purpose of revising water release requirements for water quality objectives and fish releases and for establishing dry year criteria pursuant to studies to be conducted by the permittee and other parties in an effort to better define water needs."

Condition 17 provides: "Permittee shall install and maintain an outlet pipe of adequate capacity in his dam as near as practicable to the bottom of the natural stream channel, or provide other means satisfactory to the State Water Resources Control Board, in order that water entering the reservoir which is not authorized for appropriation under this permit may be released."

**17.** The statute provides: "In the construction and operation by the [California] [D]epartment [of Water Resources] of any project under the provisions of this part a watershed or area wherein water originates, or an area immediately adjacent thereto which can conveniently be supplied with water therefrom, shall not be deprived by the department directly or indirectly of the prior right to all of the water reasonably required to adequately supply the beneficial needs of the watershed area, or any of the inhabitants or property owners therein." Cal. Water Code § 11460.

which while affecting operations of the dam, also affect the impoundment or distribution of water.[18] This resolution does no violence to *U.S. v. Water Resources*, since as I have noted, the Court there assumed that a statute either regulated water use or dam operation. Thus a reading of *U.S. v. Water Resources* restricting its application to its assumptions appears appropriate. Moreover, such a reading is consistent with logic. The fact that application of a statute may require the opening of a dam's gates does not preclude the statute from relating to the impoundment of water which in the absence of the dam would otherwise be naturally flowing.

I conclude that *U.S. v. Water Resources* should be read to free from Section 8's reach only those statutes which exclusively regulate the operation of dams and which have no effect on the distribution of water. Consistent with the teaching of *California v. United States* and *South Delta Water Agency*, Section 8 incorporates state statutes which affect both dam operation and water impoundment or distribution and statutes which solely affect water impoundment or distribution. As I explain below, § 5937 affects the impoundment and distribution of water. Accordingly, even if § 5937 also affects the operation of Friant Dam, Section 8 mandates the Bureau's compliance with the state statute.

By its terms, § 5937 mandates that the owner of a dam allow water to pass over or through the dam for certain purposes.[19] Without deciding whether § 5937 is a water appropriation statute, vel non, the statute's plain language demonstrates that it was intended to limit the amount of water a dam owner desiring to collect water for eventual irrigation may properly impound from an otherwise naturally flowing stream. Thus, it is a prohibition on what water the Bureau, as owner of the dam, may otherwise appropriate.[20] Since the water is withheld by the Bureau for the purposes of use in irrigation, the law restricting this withholding relates to the control, appropriation, use and distribution of water used in irrigation. *See California Trout Inc. v. State Water Resources Control Bd.,* 207 Cal.App.3d 585, 601, 255 Cal.Rptr. 184 (1989) ("Compulsory compliance with a rule requiring the release of sufficient water to keep fish alive necessarily limits the water available for appropriation for other uses"). Put another way, to the extent § 5937 preserves from appropriation by the Bureau of an amount of water necessary for instream uses, it relates to the appropriation or use of water used in irrigation. Accordingly, § 5937 must be held to be within the purview of state laws made applicable to the Bureau through Section 8.

IV

CONCLUSION

Defendants' motion to dismiss plaintiffs' fourth cause of action is premised upon arguments that plaintiffs lack standing to sue under the APA and that the Bureau is exempted from complying with California Fish & Game Code § 5937 because it is not

---

18. Strictly speaking, this court has no legal duty to attempt reconciliation of the two cases since the Circuit's observations concerning state laws bearing on dam operation was dicta in both *U.S. v. Water Resources* and *South Delta Water Agency*. As I have observed before, however, "[a]s a subordinate court, my role is to apply the law as pronounced by [courts hierarchally superior], and in attempting to do so, it is my duty to consider [those courts'] considered dicta." *Dodd v. John Hancock Mut. Life Ins. Co.* 688 F.Supp. 564, 572 n. 7 (E.D.Cal.1988).

19. Indeed, it can be argued that since the statute, on its face, does not mandate the opening of the gates, it does not control the actual operation of the dam. Such a strict reading is unnecessary. As I explain above, application of the statute has two effects, one relating to the impoundment of water the other to the operation of the dam. Under such circumstances, the Bureau is obligated to conform to the statute's dictate by virtue of Section 8.

20. In this regard, § 5937 is similar to Cal. Water Code § 11460, the statute in issue in *South Delta Water Agency*. Both limit the amount of water garnered from an otherwise naturally flowing stream so that prior established uses may continue. In § 11460, the affected area is the watershed, and it seeks to protect the needs of prior individual users. In § 5937, the affected area is the river bed below the dam and the beneficial need is defined as the maintenance of fish and wildlife.

**1436**

covered by the savings clause of Section 8 of the Reclamation Act of 1902. For the reasons stated above, that motion is DENIED.

IT IS SO ORDERED.